JOHN MAJERNICEK, SR., ET AL. *v.* HARTFORD
CASUALTY INSURANCE COMPANY
(15461)

Callahan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued November 7, 1996—officially released February 25, 1997

*Frank A. Bailey,* with whom was *Jason E. Tremont,* for the appellants-appellees (plaintiffs).

*Philip F. von Kuhn,* for the appellee-appellant (defendant).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether General Statutes § 38a-343 (a) requires an insurer to provide written notice of cancellation of an automobile insurance policy when an insured triggers

the policy's automatic termination clause by procuring other similar insurance. The plaintiffs, Georgetta Majernicek, John Majernicek, Sr., and John Majernicek, Jr., appeal from the judgment of the trial court, which determined that the automobile insurance policy (policy) issued by the defendant, Hartford Casualty Insurance Company, was not in effect at the time that John Majernicek, Jr., was injured in a motor vehicle accident because the automatic termination clause rendered the policy inoperative. We affirm the judgment of the trial court.

The relevant facts are as follows. On June 29, 1990, John Majernicek, Jr., was severely injured when an automobile struck the motorcycle on which he was a passenger. He brought an action against the driver of the car, which he ultimately settled for the full amount of the driver's liability coverage. At the time of the accident, he resided with his parents. After reaching a settlement with the driver, he sought underinsured motorist benefits under a policy that the defendant had issued to his parents. The defendant initially accepted the claim and made a settlement offer to him, which he rejected.

Thereafter, the defendant denied coverage, and the plaintiffs filed this application with the Superior Court seeking an order to require the defendant to proceed with arbitration in accordance with provisions of the policy. The defendant opposed the motion to proceed with arbitration claiming that the arbitration provision of the policy was inapplicable because the policy was not in effect at the time of the accident. In support of its position, the defendant noted that the policy provided for automatic termination[1] in the event that the insureds obtained other similar coverage, and that

---

[1] The automatic termination clause in the defendant's policy provides: "If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance."

Georgetta and John Majernicek, Sr., had, in fact, procured such other coverage with the Allstate Insurance Company (Allstate), prior to the accident. The defendant also claimed that Georgetta Majernicek had sent the defendant a written request to cancel the policy on behalf of both herself and her husband, who was out of the country at the time.

The plaintiffs responded with four reasons why the court should enforce the policy. First, they claimed that the policy's automatic termination clause was invalid because it violated General Statutes §§ 38a-341 (3),[2] 38a-342[3] and 38a-343 (a),[4] and, accordingly, the defendant

[2] General Statutes § 38a-341 (3) provides: " 'Nonpayment of premium' means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on the policy, or any instalment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit . . . ."

[3] General Statutes § 38a-342 provides: "(a) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons: (1) Nonpayment of premium; (2) the driver's license or motor vehicle registration of either the named insured or any operator either resident in the same household or who customarily operates an automobile insured under the policy has been revoked during the policy period or, if the policy is a renewal, during its policy period or the one hundred eighty days next preceding its effective date.

"(b) This section shall not apply to any policy issued under an automobile residual market mechanism or to any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy or to nonrenewal."

[4] General Statutes § 38a-343 (a) provides: "No notice of cancellation of policy to which section 38a-342 applies may be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to the named insured at least forty-five days before the effective date of cancellation, provided where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given. No notice of cancellation of a policy which has been in effect for less than sixty days may be effective unless mailed or delivered by the insurer at least forty-five days before the effective date of cancellation, provided that at least ten days' notice shall be given where cancellation is for nonpayment of premium or material misrepresentation. The notice of cancellation shall state or be accompanied by a statement specifying the reason for such cancellation."

was bound by a written notice that it earlier had sent to Georgetta and John Majernicek, Sr., indicating that their policy would not be canceled until July 5, 1990. Second, even though Georgetta did sign and send a written cancellation request to the defendant, the plaintiffs claimed that the cancellation request was ineffectual because it was signed only by Georgetta, who did not act as her husband's agent, and because the cancellation document contained fatal defects and omissions. Third, according to the plaintiffs, the defendant's act of sending written notice to Georgetta and John Majernicek, Sr., that their insurance would be canceled only as of July 5, 1990, led them reasonably to believe that the policy was still in effect on the date of the accident. Finally, the plaintiffs asserted that the defendant had waived its right to disclaim coverage by sending notice of a July 5, 1990 cancellation date, by initially accepting the claim and appointing an arbitrator, and by offering to settle the case.

After a hearing on the merits, the trial court concluded that the policy was not in effect at the time of the accident because the purchase of other insurance coverage from Allstate triggered the automatic termination clause in the policy, terminating the coverage of the defendant's policy. In its memorandum of decision, the trial court stated that "[t]he Allstate policy was effective as of June 1, 1990, therefore, the defendant's policy terminated as of that same date. . . . [T]he doctrine of waiver does not apply in the circumstances of this case . . . [and therefore] discussion of the plaintiffs' cancellation claims [is] unnecessary." Accordingly, the trial court denied the plaintiffs' application for an order to proceed with arbitration. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the plaintiffs contend that the trial court improperly concluded that: (1) the enforcement of the automatic termination clause in the policy did not violate § 38a-343 (a), which required written notice of intent to cancel the policy; and (2) the defendant had not waived its right to refuse coverage.[5] We are not persuaded by either of these claims. Accordingly, we affirm the judgment of the trial court.[6]

## I

The plaintiffs first challenge the trial court's conclusion that the purchase of an automobile insurance policy from Allstate triggered the policy's automatic termination of coverage clause and thereby precluded John Majernicek, Jr., from recovering under the uninsured motorist provision of the policy.[7] The plaintiffs

[5] The plaintiffs' two other claims on appeal are that the trial court should have construed the automatic termination clause in their favor because it was ambiguous, and that the automatic termination clause was invalid because it conflicts with the "other insurance" clause in the policy. Practice Book § 4061 provides that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." Because the plaintiffs did not raise these claims at trial, we will not consider them.

[6] Pursuant to Practice Book § 4013 (a) (1) (A), the defendant submitted the following claim as an alternate ground for affirming the judgment of the trial court, namely, whether the judgment should be affirmed because Georgetta Majernicek acted as her husband's agent when she signed a written request to cancel the policy. Because we affirm the trial court's judgment on the claims raised by the plaintiffs, we need not consider the alternate ground for affirmance proffered by the defendant.

[7] With regard to this claim, the plaintiffs also argue that the trial court improperly found that both Georgetta and John Majernicek, Sr., had purchased the Allstate policy because Georgetta was the sole purchaser of the policy. On June 4, 1992, John Majernicek, Sr., commenced a separate proceeding in Bridgeport Superior Court against Allstate to recover uninsured motorist benefits for his son. His complaint alleged, inter alia, that the "plaintiff, John Majernicek, Sr., had purchased a contract of insurance from the defendant, Allstate Insurance Company, providing automobile coverage for himself and his family." In light of this representation, we conclude that the trial court did not abuse its discretion in finding that both Georgetta and John Majernicek, Sr., had purchased the Allstate policy.

contend that the automatic termination clause in the policy is invalid because it violates the requirement in § 38a-343 (a) that an insurer provide written notice before canceling an automobile insurance policy. We disagree.

This court has never considered whether a clause automatically terminating an insurance policy upon the procurement of other insurance conflicts with the written notice requirement of § 38a-343 (a). We find guidance, however, in an analysis of § 38a-343 and in the precedents from other jurisdictions with similar statutory notice requirements. We begin our analysis of this issue by considering the text of § 38a-343 (a), noting at the onset that our analysis is "guided by settled principles of statutory construction that assist us in ascertaining the intent of the legislature. . . . The legislative intent is to be discerned by reference to the language of the statute, its legislative history and surrounding circumstances, the policy the [statute] was designed to implement, and the statute's relationship to the existing legislation and common law principles governing the same subject matter. . . . *Hunte* v. *Blumenthal*, 238 Conn. 146, 152, 680 A.2d 1231 (1996)." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 101, 680 A.2d 1321 (1996).

General Statutes §§ 38a-341 through 38a-344 govern the procedures for the cancellation of an automobile insurance policy by an insurer. Under § 38a-342, an insurer can choose to cancel a policy due to the insured's failure to pay the premium, or because of the revocation of the insured's driver's license or motor vehicle registration or that belonging to any operator living with the insured. Section 38a-343 (a) provides that "[n]o notice of cancellation of policy to which section 38a-342 applies may be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to

the named insured at least forty-five days before the effective date of cancellation, provided where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given. . . ."

The plaintiffs argue that, even though Georgetta and John Majernicek, Sr., purchased similar insurance from Allstate, § 38a-343 (a) obligated the defendant to send written notice of cancellation to them. We find no support for the plaintiffs' view either in the plain language or in the legislative history of § 38a-343 (a). Rather, in enacting § 38a-343 (a), the legislature appears to have intended to eliminate the potentially harsh consequences to an insured of driving without knowing that his or her policy was inoperative. See 13 H.R. Proc., Pt. 10, 1969 Sess., p. 4437, remarks of Representative Gerald Stevens ("[i]f . . . someone has his insurance policy canceled and is driving under the mistaken impression that he has insurance and subsequently is involved in an accident, the consequences can be rather severe"); see also *Johnston* v. *American Employers Ins. Co.*, 25 Conn. App. 95, 97–98, 592 A.2d 975 (1991) ("purpose of General Statutes § 38a-343 . . . is to assure that before an automobile insurance policy is cancelled the insured has a clear and unambiguous notice of the cancellation"). Thus, the requirement that an insurer provide an insured with notice of its decision to cancel an automobile insurance policy was a legislative effort that focused on affording an insured an adequate opportunity to procure other insurance.

In the present case, the purchase of the Allstate policy was an affirmative act by Georgetta and John Majernicek, Sr., unilaterally terminating the defendant's policy, rather than a basis for a decision by the defendant whether to cancel the policy. Written notice of cancellation obviously was not necessary in order for Georgetta and John Majernicek, Sr., to have had an adequate

opportunity to procure other insurance. Indeed, their purchase of similar insurance from Allstate was the means by which they triggered the policy's automatic termination clause. Consequently, requiring the defendant to provide a written cancellation notice to them after they had triggered the automatic termination clause by procuring other similar insurance would not have furthered the legislative purpose of § 38a-343 (a). We can discern no public policy reason for extending the reach of § 38a-343 (a) to allow an insured to terminate a policy by his or her own action, and yet retain coverage under the insurer's policy solely because the insurer did not send written notice of cancellation. Accordingly, we conclude that, when an insured triggers an automatic termination clause by obtaining other insurance, the insurer is not obligated by § 38a-343 (a) to send the insured notice of cancellation.

Decisions of other jurisdictions with similar statutory notice requirements support this conclusion. In *Taxter v. Safeco Ins. Co. of America,* 44 Wash. App. 121, 126–27, 721 P.2d 972 (1986), the Washington Court of Appeals upheld an automatic termination clause against a claim by an insured that the clause violated a statute requiring an insurer to provide twenty days written notice before canceling an insurance policy.[8] The court reasoned that "[t]he term 'cancellation' refers to a unilateral act of the insurer terminating coverage during the policy term. . . . The purpose of the 'notice' statutes is to provide the insured the opportunity to obtain other insurance prior to cancellation. . . . Courts have held [that this notice statute] is not applicable when it is the insured's act which brings about the termination of the policy

---

[8] Wash. Rev. Code Ann. § 48.18.291 (West 1984) provides in relevant part: "(1) No contract of insurance predicated upon the use of a private passenger automobile shall be terminated by cancellation by the insurer until at least twenty days after mailing written notice of cancellation to the named insured at the latest address filed with the insurer by or on behalf of the named insured, accompanied by the reason therefor . . . ."

and have refused to apply it. . . . Here, it was the act of the insured . . . that resulted in the termination. That termination did not leave [the insured] without coverage because of the [other] policy; hence, the purpose of the notice statutes remains unimpaired." (Citations omitted.) Id. Similarly, in *Stith* v. *Milwaukee Guardian Ins., Inc.*, 44 Ohio App. 3d 147, 148–49, 541 N.E.2d 1071 (1988), the Ohio Court of Appeals followed the *Taxter* rationale in upholding an automatic termination clause against the claim that the clause violated the statutory notice requirement. The court stated that "[w]e do not agree that [the notice statute] governs the method of cancellation in all situations. It is apparent that the purpose of this statute is to provide the insured with adequate notice of an impending cancellation, thus affording the opportunity to obtain other automobile insurance. However, when the automobile insurance cancellation is predicated upon the insured's purchase of other insurance, the purpose of the statute remains unimpaired. . . . We hold, therefore, that such an automatic termination provision is valid." (Citation omitted.) Id., citing *Taxter* v. *Safeco Ins. Co. of America*, supra, 126–27. We are persuaded by the reasoning of these decisions.

The plaintiffs further contend that their position is supported by the principle that strict compliance by an insurer with statutory mandates and policy provisions concerning notice is essential to effect a policy cancellation, and that any uncertainty as to the meaning of a notice from an insurer to its insured must be resolved against the insurer in favor of the insured. See *Travelers Ins. Co.* v. *Hendrickson*, 1 Conn. App. 409, 412–13, 472 A.2d 356 (1984). We do not disavow the principle that when written notice of cancellation is required, an insurer must comply strictly with policy provisions and statutory mandates. In the present case, the defendant did not cancel the policy. Rather, Georgetta and John Majernicek, Sr., terminated the policy of their own

accord. Because the triggering of the automatic termination clause eliminates the necessity of compliance with the notice requirement of § 38a-343 (a), strict compliance with statutory and policy notice provisions is not relevant to the resolution of plaintiffs' claim.

II

The plaintiffs also contend that the trial court improperly concluded that the defendant did not waive its right to refuse coverage for John Majernicek, Jr. We are not persuaded.

"Waiver is the intentional relinquishment of a known right. *Wadia Enterprises, Inc.* v. *Hirschfeld,* 224 Conn. 240, 251, 618 A.2d 506 (1992); *Olean* v. *Treglia,* 190 Conn. 756, 772, 463 A.2d 242 (1983); *Multiplastics, Inc.* v. *Arch Industries, Inc.,* 166 Conn. 280, 286, 348 A.2d 618 (1974); *Brauer* v. *Freccia,* 159 Conn. 289, 295, 268 A.2d 645 (1970)." *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania,* 231 Conn. 756, 777, 653 A.2d 122 (1995). "Our review of the trial court's determination is guided by the principle that, because waiver . . . [is a question] of fact; *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 300, 438 A.2d 62 (1980); we will not disturb the trial court's findings unless they are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.,* 217 Conn. 340, 350, 586 A.2d 567 (1991).

Before the trial court, the plaintiffs argued that even if the policy issued by the defendant did terminate on June 1, 1990, the effective date of the Allstate policy, the defendant waived its right to disclaim coverage by sending notice of a July 5, 1990 cancellation date, by initially accepting the claim, by appointing an administrator, and by offering to settle the case. The trial court concluded that the plaintiffs had not sustained their burden of proving waiver by the defendant because

they had failed to demonstrate that the defendant knew that Georgetta and John Majernicek, Sr., had terminated the policy by purchasing the Allstate policy.

Our review of the record supports the trial court's finding that, at the time of the defendant's conduct on which the plaintiffs rely, the defendant lacked any knowledge that a similar policy had been obtained from Allstate. "[W]here one lacks knowledge of a right there is no basis upon which a waiver of it can rest. . . ." (Citations omitted; internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 562, 316 A.2d 394 (1972). We conclude that the trial court's finding was not clearly erroneous.

The judgment is affirmed.

In this opinion the other justices concurred.